## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**KENNETH LAMAR WILLIAMS,**

         **Plaintiff,**

**v.**                                    **Case No. 3:05cv264/MCR/MD**

**RON McNESBY, in his official capacity**
**as Escambia County Sheriff;**
**THOMAS MICHAEL KELLY, in his individual capacity; and**
**COREY CEPHAS,  in his individual capacity,**

         **Defendants.**

_____/

## O R D E R

      Kenneth Williams ("plaintiff or Williams") sues Thomas Kelly ("Kelly") and Corey Cephas ("Cephas"), both deputies with the Escambia County Sheriff's Office, and Ron McNesby, Sheriff of Escambia County ("McNesby"), under state and federal law for violation of his civil rights.  Plaintiff claims that Kelly and Cephas used excessive force against him in the course of an unlawful arrest in 2001 and that McNesby is liable for the deputies' conduct.[1]  Pending are the motions for summary judgment or partial summary judgment filed, respectively, by Cephas (doc. 17) and Williams (doc. 21), and the motion

---

[1] Plaintiff's complaint raises the following four claims: excessive force under 42 U.S.C. § 1983 (Count I); battery under Florida law (Count II); unlawful arrest under 42 U.S.C. § 1983 (Count III); and false arrest under Florida law (Count IV).  In all four counts plaintiff names the deputies as defendants; plaintiff pleads Counts II and IV in the alternative, however, naming McNesby as defendant.

for partial judgment on the pleadings filed by McNesby (doc. 18).[2]  As explained below, the court denies Williams' and McNesby's motions and grants Cephas' motion.  In addition, pursuant to its own <u>sua</u> <u>sponte</u> motion, the court grants partial summary judgment in Kelly's favor.

**Background**

      The factual background of this case centers on events which occurred December 7, 2001.  According to plaintiff, on that date he was standing near a fence at 21 Loretta Street in Pensacola, Florida, at approximately 6:30 p.m., speaking with several friends.  A woman from across the street called out and invited him to come over to her house at 20 Loretta Street.  Plaintiff says this woman was the mother of a child he had mentored in the past and she wanted to show him the boy's football trophy.  As plaintiff was crossing the street towards 20 Loretta Street, plaintiff observed the woman as well as other neighbors rush inside their homes and close the doors.  At the same time, plaintiff observed two patrol cars with their headlights off turn onto Loretta Street.

      Both Kelly and Cephas state they were on routine patrol separately that evening in marked patrol cars.  According to the deputies, they cruised into the Loretta Street neighborhood because it is a high crime area known for drug trafficking.  At the time they turned onto Loretta Street they observed plaintiff and another male standing together in the middle of the street.  When plaintiff and the other man saw the patrol cars they immediately split up and started walking in opposite directions.  Kelly says he pulled up beside plaintiff, who was walking towards the yard of 20 Loretta Street.  Cephas went to the other side of the street and approached the man with whom plaintiff had been seen, who was later identified as Curtis DuCree ("DuCree").  Kelly's states that at this time he did not suspect plaintiff of drug dealing and was only initiating a citizen contact with him.  Cephas agrees

---

[2]  The court notes that in its advisement order dated February 15, 2006 (doc. 20), it erroneously referred to McNesby's motion for judgment on the pleadings as a motion for summary judgment and invited the parties to submit additional evidentiary materials with respect to it.  No matters outside the pleadings were presented with the motion or were presented later, however.  Accordingly,  the court perceives no reason to treat McNesby's motion as having been brought pursuant to Rule 56, as provided by Rule 12(c).  Any prior reference to Rule 56 in connection with McNesby's motion shall therefore be disregarded, and the court shall proceed to consider the motion on the pleadings as set forth in Rule 12(c).

that they intended to initiate citizen contacts but with the purpose "to find out if they were selling drugs."

Kelly testified that he exited his vehicle and approached plaintiff, asking him if he lived at 20 Loretta Street.  According to Kelly, plaintiff responded "no" and continued walking toward the house at 20 Loretta Street.  Kelly states that at that point he believed plaintiff was going to enter the yard of 20 Loretta Street so he asked him if he knew who lived there, to which plaintiff responded "some people."   Kelly says at this time plaintiff, who was wearing a heavy black leather jacket, was now approximately ten to fifteen feet away, facing him with his hands in his pants pockets.  Kelly testified he next asked plaintiff to remove his hands from his pockets for officer safety reasons, although Kelly admits he did not see a bulge in plaintiff's pockets or any other indication plaintiff was carrying a weapon.  Nevertheless, according to Kelly, he felt somewhat threatened and nervous with plaintiff's hands in his pockets: Loretta Street is a high crime area; plaintiff had attempted to change direction when he saw law enforcement approaching; plaintiff apparently did not live in the area; and plaintiff was attempting to enter the property of a house for which he could not (or would not) identify the residents.  Despite Kelly's request, plaintiff did not remove his hands from his pockets.  Kelly then asked plaintiff several more times to remove his hands from his pockets, with plaintiff failing to respond.

Kelly says that at this point in his mind he was dealing with a person who had declined to communicate with him about his intentions and was refusing to comply with his request that he remove his hands from his pockets.[3]  Having asked plaintiff at least three times to remove his hands from his pockets without compliance, Kelly moved his hand to his service revolver.  Kelly did not unholster the weapon.  At that point, Kelly states that plaintiff removed his hands from his pockets and when he did so Kelly observed a plastic baggie cupped in one of plaintiff's hands.  Kelly testified that although plaintiff was attempting to conceal the baggie Kelly could see enough of it to form a belief that the baggie contained marijuana.  Kelly then instructed plaintiff to walk towards him with his

---

[3]  According to Kelly, approximately one minute passed between the time he initially approached plaintiff and his final request that plaintiff remove his hands from his pockets.

hands out.  Instead of doing so, however, plaintiff dropped the baggie to the ground and began walking in the opposite direction just inside the yard of 20 Loretta Street.  Kelly states that when plaintiff started walking away from him he approached plaintiff and grabbed him. According to Kelly, at that point plaintiff stiffened his body and refused to move.  In response, Kelly went down onto the ground with plaintiff and handcuffed him within a matter of seconds.  Kelly could not recall whether Cephas assisted him.

Plaintiff's version of the events differs in several respects from Kelly's.  Plaintiff claims that Kelly first approached him and asked, "Where are you going?" "Do you live there?" and "Who are you going to see?"  According to plaintiff, he responded by asking "Which one of those questions do you want me to answer first?" and then continued walking toward the house at 20 Loretta Street.  Plaintiff states that at that point, Kelly said "Hey, I'm talking to you" and plaintiff then turned back around to face Kelly.  Plaintiff asserts that Kelly then directed him to walk towards him.  Plaintiff testified that at this time Kelly's tone was aggressive and commanding and he became afraid.  Also at this point Kelly unsnapped his gun holster.  According to plaintiff, Kelly then told plaintiff to "Get your hands out of your pockets."  Plaintiff says he was frightened and froze, i.e., he did not move at all.   Kelly then again instructed him to remove his hands from his pockets. Plaintiff complied and began walking slowly towards Kelly with his hands out in front of him.[4]  Plaintiff states that Kelly then said in a commanding tone "Didn't I tell you to get your f---ing hands out of your pockets?"  Kelly then told him again to walk towards him.  Plaintiff states that Kelly's hand was on his weapon throughout this exchange although he acknowledges that the weapon was never out of its holster.

Plaintiff testified that at this point he moved to within two to three feet of Kelly, and Kelly told him to put his hands behind his back, which he did.  Kelly immediately forced plaintiff down to the ground with a wrestling move. Kelly did not strike or tase plaintiff. According to plaintiff, when Kelly took him down his face and chest hit the ground hard. Kelly pulled plaintiff's left arm up into the air, then his right arm, and cuffed him behind his

---

[4] Plaintiff claims that he removed his hands from his pockets within five seconds of being told to do so by Kelly.

back, with Kelly's knee pressed against his neck.  Plaintiff also felt something against his back and determined that it was the bottom of Cephas' shoe.[5]  According to plaintiff, Cephas raised his foot up and put it down on his back more than once and also applied continuous pressure.  Plaintiff admits Cephas never struck him. While Cephas was restraining plaintiff Kelly walked across the street to arrest DuCree.  Plaintiff states that Cephas kept his foot in his back in excess of fifteen minutes. Additionally, plaintiff maintains that both Cephas and Kelly tried to lift him two to three times with the handcuffs, apparently by pulling on the chain.  Cephas tried once to lift him by pulling on the chain, at which point plaintiff complained to Cephas that he could not feel his legs.[6]  Plaintiff states that he remained on the ground for a total of forty-five minutes.[7]

Plaintiff contends that he possessed no marijuana at the time he was stopped. Rather, according to plaintiff, Kelly must have had the bag of marijuana all along and planted it on plaintiff when a supervisor from the sheriff's office, who  arrived on the scene after Kelly and Cephas, had his back turned.[8]  Plaintiff insists Kelly searched him three times before that and found nothing, which is why he planted the marijuana.[9]

Cephas testified that at the time he approached plaintiff and Kelly, plaintiff was already on the ground but not handcuffed.  He says he assisted Kelly in getting the cuffs on plaintiff.  Cephas did not know why plaintiff was being arrested.  Cephas says plaintiff did not resist and he witnessed no unlawful conduct on plaintiff's part.  Cephas testified also that he could hear Kelly speaking to plaintiff and that Kelly's voice was elevated.

---

[5]  According to the testimony, Cephas had not been involved up to this point and plaintiff did not overhear any instructions from Kelly to Cephas.

[6]  Plaintiff asserts this lasted fifteen seconds.

[7]  When asked what was the worst thing Cephas had done to him plaintiff states that Cephas stood on his back and belittled him.

[8]  The amount of marijuana was less than twenty grams.

[9]  Plaintiff also claims DuCree's mother was present when Kelly planted the marijuana. There is nothing in the record to support this assertion, however.

Kelly testified that both he and Cephas handcuffed plaintiff, after which Kelly put DuCree in one police cruiser while plaintiff was put into the other. Both plaintiff and Ducree were taken to the police station, where plaintiff was charged with possession of marijuana less than twenty grams (a misdemeanor) and resisting arrest without violence. Plaintiff was tried and convicted of these charges. On appeal, the convictions were overturned based on the circuit court's determination that plaintiff had been unlawfully detained and thus the evidence should have been suppressed.[10]

**Standards of Review**

    Summary Judgment

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Anderson, 477 U.S. at 248; Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). Nevertheless, a general denial unaccompanied by any evidentiary support will not suffice. See, e.g., Courson v. McMillian, 939 F.2d 1479 (11th Cir. 1991); Hutton v. Strickland, 919 F.2d 1531 (11th Cir. 1991). Furthermore, the court is not obliged to deny

---

[10] The order of the circuit court reflects that the state failed to file a responsive brief and therefore the order was based on the record as presented by plaintiff.

summary judgment for the moving party when the evidence favoring the nonmoving party is merely colorable or is not significantly probative. See Anderson, 477 U.S. at 249. Indeed, the existence of a scintilla of evidence in support of the nonmovant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 252. The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). Once the movant satisfies its burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587 (emphasis omitted).

Judgment on the Pleadings

Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts. See Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint. See White v. Lemacks, 183 F.3d 1253, 1255 (11th Cir.1999). The allegations contained in the complaint must be accepted as true, and the facts and inferences must be construed in the light most favorable to the non-moving party. See Hawthorne, 140 F.3d at 1370.

**Discussion**

Count I: Section 1983 Excessive Force Claim Against Kelly and Cephas[11]

In his motion for partial summary judgment against Kelly, plaintiff states that "if [he] prevails on his unlawful seizure claim, his excessive force claim is subsumed into it, as any

---

[11] Only Cephas has moved for summary judgment as to Count I.

force used by Defendant Kelly to arrest him was *de facto* excessive." (Doc. 21 at 14, <u>citing</u> <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1170-71 (11th Cir. 2000)).  In addition, in his response to Cephas' motion for summary judgment, plaintiff notes that

> With respect to Mr. Williams' claim of excessive force, the 11th Circuit has ruled that "where a plaintiff's Fourth Amendment claim is founded on an unlawful arrest, any force used in effecting such an arrest is necessarily excessive and need not be proven as a distinct claim; rather the quantum of force of injury goes to the plaintiff's damages."

(Doc. 28 at 15, <u>quoting</u> <u>McCray v. City of Dothan</u>, 2003 WL 23518420, other citation omitted).  Plaintiff thus likewise argues that "any force used by Defendant Cephas to arrest Mr. Williams was *de facto* excessive." <u>Id.</u> (<u>citing</u> <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1170-71 (11th Cir. 2000).

As plaintiff suggests, "[u]nder this Circuit's law . . . a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." <u>Bashir v. Rockdale County</u>, 445 F.3d 1323, 1331 (11th Cir. 2006) (<u>citing</u> <u>Jackson</u>, 206 F.3d at 1171). As further explained by the <u>Bashir</u> court, "the right to make an arrest 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" <u>Id.</u> (<u>citing</u> <u>Graham v. Connor</u>, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72, 104  L.Ed.2d 443 (1989)).  The court went on to state that

> [a]n excessive force claim evokes the Fourth Amendment's protection against the use of an unreasonable quantum of force (<u>i.e.</u>, non-<u>de</u> <u>minimis</u> force unreasonably disproportionate to the need) in effecting an otherwise lawful arrest.  When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest.

<u>Bashir</u>, 445 F.3d at 1332.

Plaintiff's arguments indicate, and the court agrees, that the essence of his claim in Count I – against both Kelly and Cephas – is that they used excessive force in arresting him because they lacked a right to arrest him at all. Contrary to plaintiff's apparent belief, however, the law is not that the excessive force claim is subsumed into the unlawful arrest claim only if the plaintiff first prevails on the latter.  Rather, as noted above, a properly

stated excessive force claim "presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest." <u>Bashir</u>, 445 F.3d at 1332.  In this case, plaintiff's claim of excessive force is not a discrete constitutional violation cognizable as a separate claim; rather, the claim is dependent upon and inseparable from Count III, plaintiff's unlawful arrest claim. <u>Jackson</u>, 206 F.3d at 1171.  As Count I does not present a discrete excessive force claim, it fails as a matter of law.[12]  <u>Id.</u>  Dismissal of Count I is therefore appropriate.

<u>Count III: Section 1983 Unlawful Arrest Claim Against Kelly and Cephas</u>[13]

In his motion for summary judgment Cephas submits that he is entitled to qualified immunity as to Count III because, under the circumstances as he perceived them on the evening in question and as has plaintiff described them, arguable probable cause existed to arrest plaintiff.  Plaintiff argues in response that Cephas is not entitled to qualified immunity because he personally participated in and was integral to plaintiff's unlawful seizure and arrest.

---

[12] The court notes the allegations in the complaint that Kelly "slammed [plaintiff's] face into the ground," "pulled his arms back so far it felt like they were breaking," and, as plaintiff lay on the ground, pulled up on the handcuff chain with plaintiff's hands cuffed behind him. Also, Cephas "stepped on plaintiff's back." In addition, plaintiff alleges that when he was unable to rise from the ground, both deputies grabbed him under the arms and dragged him. (<u>See</u> doc. 1, ¶ ¶ 22-24).
 Plaintiff does not argue that the forced used was excessive even if the stop of which he complains was supported by reasonable suspicion or the arrest was supported by probable cause. Moreover, the court is satisfied that under the law of this circuit the quantum of force used by Kelly and Cephas was not unreasonably disproportionate to the need and therefore was not excessive. <u>See, e.g.,</u>Nolin v. Isbell, 207 F.3d 1253, 1257-58 (11th Cir. 2000) (indicating that painful handcuffing in the course of an arrest, without more, does not amount to excessive force if the resulting injuries are minimal).  <u>See also</u> <u>Rodriguez v. Farrell</u>, 280 F.3d 1341 (11th Cir. 2002) (<u>Rodriguez I</u>), <u>rehearing denied</u>, 294 F.3d 1276 (11th Cir. 2002), and <u>Rodriguez v. Farrell</u>, 294 F.3d 1276 (11th Cir. 2002) (<u>Rodriguez II</u>), <u>cert. denied</u>, 538 U.S. 906, 123 S.Ct. 1482, 155 L.Ed.2d 225 (2003).

[13] To state a claim for relief under § 1983 a plaintiff must establish that he was deprived of a right secured by the constitution or laws of the United States and that the person who committed the alleged deprivation acted under color of state law. <u>See</u> <u>Focus on the Family v. Pinellas Suncoast Transit Authority</u>, 344 F.3d 1263, 1277 (11th Cir. 2003); <u>Patrick v. Floyd Medical Center</u>, 201 F.3d 1313, 1315 (11th Cir. 2000). In this case there is no dispute that both of the deputies were acting under color of state law during the events at issue in this case.

Case No. 3:05cv264/MCR/MD

The qualified immunity analysis first requires a finding that Cephas was acting within the scope of his discretionary authority when the allegedly wrongful act occurred.[14]  See Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988)).  In this case, there appears to be no dispute as to whether Cephas was acting in his discretionary capacity when he came into contact with plaintiff.  Accordingly, the court next considers whether plaintiff has met his burden of showing that Cephas is not entitled to qualified immunity. See id. (stating that once it is established that defendant was acting within his discretionary authority the burden shifts to the plaintiff to show that qualified immunity is not appropriate). This inquiry requires that the court, taking the facts in the light most favorable to the party asserting the injury, ask, "Do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).  If, under the injured party's version of the facts, the defendant's conduct violated a constitutional right the court must then determine "whether the right was clearly established." Id.

The court finds that the facts, viewed in the light most favorable to plaintiff, do not show that Cephas violated plaintiff's constitutional right to be free of unlawful seizure or arrest. First, the evidence does not reflect that Cephas participated in detaining plaintiff. Rather, it was Kelly who first approached plaintiff and initiated verbal contact with him.  In addition, it was Kelly alone who seized plaintiff by placing his hand on his holstered weapon, thereby giving rise to a reasonable belief by plaintiff that he was no longer free to leave. See Terry v. Ohio, 392 U.S. 1, 19, n.16, 88 S.Ct. 1868, 1879, n.16, 20 L.Ed.2d 889 (1968) (a Fourth Amendment "seizure" occurs when government actors have, "by

---

[14] "Qualified immunity protects government officials performing discretionary functions from civil trials and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Sanders v. Howze, 177 F.3d 1245, 1249 (11th Cir. 1999) (quoting Lassiter v. Alabama A & M University Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc)). Under the defense's standard of objective reasonableness, a government agent must be given the benefit of the doubt unless his actions were "so obviously illegal in the light of then existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." Id. Entitlement to qualified immunity therefore represents the rule, not the exception: "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." Id. (quoting Lassiter, 28 F.3d at 1149).

means of physical force or show of authority . . . in some way restrained the liberty of a citizen").[15]  The facts, taken in the light most favorable to plaintiff, show that Cephas did not personally participate in plaintiff's seizure nor was he an integral part of it.  Plaintiff's efforts to characterize Cephas' involvement otherwise are unavailing.  Accordingly, the court finds that Cephas did not violate plaintiff's right to be free of unlawful seizure.

Second, the evidence reflects that Cephas did not violate plaintiff's right to be free of unlawful arrest.  Rather, at the time Kelly commenced arresting plaintiff Cephas was engaged some distance away with DuCree.  The facts, again taken in the light most favorable to plaintiff, reflect that Cephas heard Kelly's shouted instructions to plaintiff and then saw plaintiff down on the ground, unhandcuffed, with Kelly attempting to restrain him. Under uncertain and rapidly developing circumstances, the precise parameters of which Cephas obviously could not immediately ascertain, Cephas simply moved in to assist his fellow officer to effect the arrest safely by helping to restrain plaintiff and place him in handcuffs.  While officers must affirmatively intervene to prevent other officers from violating an individual's constitutional rights, see Byrd v. Clark, 783 F.2d 1002 (11th Cir. 1986), under the circumstances in this case that obligation did not extend to Cephas' questioning the basis for Kelly's reasons for the arrest. See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (holding that "officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know:  (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested;  or (3) that any constitutional violation has been committed by a law enforcement official").  Here, Cephas became involved in the arrest after Kelly had seized plaintiff, and Cephas did not observe or have reason to know the basis for the seizure.[16]

---

[15]  Three types of police-citizen encounters "invoke the [F]ourth [A]mendment: police-citizen communications involving no coercion or detention; brief seizures or investigative detentions; and full-scale arrests." United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989). Investigative detentions involve "reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave." Id. (citing Terry, supra).

[16]  Furthermore, the amount of force used by Cephas was not disproportionate to the need, and plaintiff has not alleged or shown that Cephas had any involvement in or knowledge of the alleged planting of marijuana on his person.

Accordingly, the court finds that Cephas did not violate plaintiff's right to be free of unlawful arrest, either by failing to intervene or otherwise.

In sum, Cephas is entitled to qualified immunity on plaintiff's claim of unlawful seizure and unlawful arrest. Accordingly, Cephas' motion seeking summary judgment in his favor as to Count III is granted.

The court next consider's plaintiff's motion for partial summary judgment against Kelly. Plaintiff argues that Kelly seized him without any arguable reasonable suspicion that plaintiff was engaged in illegal activity or that he was armed and dangerous.[17] Nor, plaintiff contends, is Kelly is entitled to qualified immunity for this conduct. According to plaintiff, in the course of engaging in a citizen contact with an individual whose hands are in his pockets on a cold night, no reasonable officer could conclude that proceeding to seize the individual because he does not immediately respond to the officer's demand that he remove his hands from his pockets comports with the Fourth Amendment. In response Kelly maintains that summary judgment should be denied because his citizen contact with plaintiff rapidly ripened into an investigative detention which was supported by reasonable suspicion. Kelly, who raised qualified immunity as an affirmative defense in his answer, without elaboration also references the defense in his response.

A law enforcement officer may only initiate an investigative detention, or seizure, if he has reasonable suspicion that the individual has committed, is committing, or is about to commit a crime or if the officer has a reasonable suspicion that the individual detained is armed and dangerous. See Terry, 392 U.S. at 23-28. Reasonable suspicion is not satisfied by "an inchoate and unparticularized suspicion or hunch of criminal activity." United States v. Yuknavich, 419 F.3d 1302, 1311 (11th Cir. 2005). Rather, the officer must

---

[17] Plaintiff states that although Count III alleges both that Kelly unlawfully seized him and unlawfully arrested him, his motion for summary judgment is "directed solely to the unlawful seizure aspect of the count . . . ." (Doc. 21 at 2). He notes, however, that if Kelly "unlawfully seized him and that seizure resulted in Defendant Kelly finding marijuana in Mr. Williams' possession, a false arrest claim flows from the unlawful seizure . . . ." (Id.).

"be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21.

The defense having been raised in Kelly's answer and response to plaintiff's motion, the court considers Kelly's entitlement to qualified immunity as to the illegal seizure claim in Count III.[18]  As an initial matter, the court finds that Kelly was acting within the scope of his discretionary authority when he made the allegedly unlawful seizure. See Courson, 939 F.2d at 1487.  The burden therefore shifts to plaintiff to show that Kelly is not entitled to qualified immunity. Id.

The Eleventh Circuit has instructed that "[a] law enforcement officer who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity.  When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed, but whether the officer had "arguable" reasonable suspicion to support an investigatory stop." Jackson, 206 F.3d at 1165-66.  Taking the facts in the light most favorable to the plaintiff, the court concludes that Kelly had arguable reasonable suspicion to seize plaintiff. The deputies arrived on Loretta Street at approximately 6:30 p.m., on December 7, 2001.  Loretta Street is an area known to be plagued by illegal drug activities and at the time the deputies were there it was dark.  As the patrol cars pulled in, plaintiff was approaching the gate to 20 Loretta Street; at the same time, several neighbors rushed inside their homes and closed their doors. Kelly saw plaintiff moving quickly away from DuCree.  Kelly exited his vehicle and approached plaintiff in an attempt to speak with him.  Plaintiff was evasive in response to Kelly's questions, and he continued walking towards 20 Loretta Street.  While none of these events and circumstances, alone or together, may have been sufficient to raise a reasonable suspicion in Kelly's mind of criminal activity, they nevertheless did nothing to quell Kelly's concerns that such might be the case. More

---

[18]  The court notes plaintiff's statement that in reviewing his motion for summary judgment the court should assume Kelly's version of the facts is true.  For purposes of its analysis of Kelly's claim of entitlement to qualified immunity, however, the court considers the record in the light most favorable to plaintiff. See Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005) (noting that in qualified immunity analysis the district court proceeds with "plaintiff's best case before it").

importantly, these events, when considered in connection with what transpired almost simultaneously or very shortly thereafter, were sufficient to raise an arguable reasonable suspicion that criminal conduct could be afoot.

As plaintiff contends, because Kelly's initial contact with him could be considered a citizen contact he was not obliged to stop and speak with Kelly. Walking away from consensual conversation with an officer is the right of any participant in such an encounter. Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (holding that the "person approached, however, need not answer any question put to him; indeed he may decline to listen to the questions at all and may go on his way."). As plaintiff submits, therefore, had he "completely ignored Defendant Kelly from the time Defendant Kelly attempted his citizen contact, Mr. Williams would have been perfectly within his rights." (Doc. 21 at 7). Plaintiff did not, however, ignore Kelly. Rather, plaintiff responded – with intentional evasiveness to Kelly's inquiries. Also, although plaintiff maintains the time elapsed was no more than five seconds, given the circumstances and the context of the rapidly evolving situation, plaintiff responded relatively slowly to Kelly's urgent requests to remove his hands from his pockets. In addition, plaintiff obviously was preparing to enter the yard of 20 Loretta even though he had indicated to Kelly he did not live there and he would not identify the residents. Further, despite the fact that Kelly did not see a bulge in plaintiff's clothing, which might have indicated the presence of a weapon, it was dark and plaintiff was wearing a heavy black leather jacket which obscured his form. Although the "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), in this case Kelly had "more." Taken together with the time, location, and other circumstances of the stop previously described, arguable reasonable suspicion existed that plaintiff had committed or was about to commit an offense – possibly involving drugs, burglary, or trespass – or that plaintiff was armed and potentially dangerous. See Terry, 392 U.S. at 23-28. Even if Kelly mistakenly determined that reasonable suspicion existed to seize plaintiff, this conclusion – under the totality of

the circumstances with which Kelly was presented – nevertheless was reasonably reached. See Jackson, 206 F.3d at 1165-66.

In short, the court is satisfied that, viewing the facts in the light most favorable to plaintiff, there are specific and articulable facts, and rational inferences to be made from those facts, which support a finding that Kelly had arguable reasonable suspicion to seize plaintiff. Accordingly, as Kelly did not violate plaintiff's constitutional right to be free of unlawful seizure, Kelly is entitled to qualified immunity. Plaintiff's motion for partial summary judgment against Kelly is therefore denied.  Further, finding that plaintiff's claim of unlawful seizure has been fully litigated by the parties, with adequate notice to plaintiff, the court additionally concludes that partial summary judgment should be entered in Kelly's favor on this limited issue.[19]

Count II: State Law Battery Claim

Cephas moves for summary judgment on Count II.  Cephas, noting that battery is an inherent and privileged part of a lawful custodial arrest, asserts that his actions during plaintiff's arrest were objectively reasonable and thus lawful. In his answer Cephas also asserts the affirmative defense of immunity for liability pursuant to Fla. Stat. § 768.28(9).[20]

---

[19]  The district court may enter summary judgment sua sponte and  and without a formal cross motion provided the losing party "was on notice that she had to come forward with all of her evidence." Celotex Corp, 477 U.S. at 326.  The Eleventh Circuit has recognized that the ten day notice provision of Rule 56 "is not an unimportant technicality, but a vital procedural safeguard" to a party's right to offer the best defense to any Challenge." Burton v. City of Belle Glade, 178 F.3d 1175 (11th Cir. 1999) (citations omitted). If the party against whom judgment will be entered is given sufficient advance notice, however, and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted, granting summary judgment sua sponte is entirely appropriate.  See 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §  2720 (3d ed.1998).  In this case, because plaintiff has been granted sufficient notice with respect to his unlawful seizure claim in Count III and this issue has been fully litigated, the court so proceeds.

The court additionally notes that counsel for Kelly might have taken the initiative in defending this case and moved for summary judgment on his behalf, including asserting a well-developed argument regarding Kelly's entitlement to qualified immunity as to the entirety of Count III.  Counsel failed to do so, however. Nevertheless, in the interest of judicial economy, the court takes this limited action.

[20]  This section provides in relevant part:
(9)(a) No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights,

Plaintiff responds that Cephas was an active participant in his unlawful arrest and accordingly is liable for the entirety of his damages under common law, including those for the force used to effect the arrest.  In addition, plaintiff urges, a jury could determine that Cephas' participation in the arrest exhibited a "wanton and willful disregard of human rights, safety, or property," such that Cephas is not entitled to immunity under § 768.28(9).

Summary judgment is due to be granted in Cephas' favor on this claim. Taking the evidence in the light most favorable to plaintiff, the court has no doubt but that Cephas was acting within the scope of his employment and that he did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights when he assisted in restraining and handcuffing plaintiff. See Prieto v. Malgor, 361 F.3d 1313 (11th Cir. 2004) (indicating that under Florida law an officer may not be held personally liable for any injury resulting from an act committed within the scope of his employment unless the officer acted with bad faith or malice).   No reasonable jury could conclude otherwise. As Cephas is therefore entitled to immunity from suit and from liability pursuant to Fla. Stat. § 768.28(9)(a) on plaintiff's state law claim of battery, Cephas' motion for summary judgment as to Count II is granted.

<u>Count IV: State Law False Arrest Claim</u>

Cephas moves for summary judgment on Count IV of the complaint, arguing that he is entitled to immunity under Fla. Stat. § 768.28(9).  According to Cephas, the evidence shows that he did not initiate the arrest but rather simply came to Kelly's aid during the arrest.  As there is no evidence to support even an inference otherwise, Cephas contends, as a matter of law he did not act willfully or wantonly at the time of plaintiff's arrest and thus

---

safety, or property. . . .  The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or  omission was committed in bad faith with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

is immune from liability.  In opposition plaintiff makes the same argument as he did with respect to Count II: that Cephas was an active participant in his unlawful arrest, that he should be held liable for the entirety of plaintiff's damages, and that a jury could determine that Cephas' participation in the arrest exhibited a wanton and willful disregard of human rights, safety, or property such that Cephas is not entitled to immunity under § 768.28(9).

Again, viewing the evidence in the light most favorable to plaintiff, the court is satisfied that Cephas' participation in plaintiff's arrest was limited to helping to restrain plaintiff and place him in handcuffs after Kelly had initiated the arrest. Cephas had no actual involvement in the decision to arrest plaintiff or knowledge of the basis for the arrest. Cephas' limited involvement did not directly implicate, much less violate, plaintiff's right to be free of unlawful arrest.  Cephas' motion for summary judgment as to this claim should therefore be granted.  In addition, although immunity pursuant to § 768.28(9)(a) is not available in a claim of false arrest involving a warrantless arrest, see Lester v. City of Tavares, 603 So.2d 18, 19 (Fla. 5th DCA 1992) (Florida law does not provide sovereign immunity for claims of false arrest), the court concludes that Cephas is entitled to such immunity given his role in the events of this case.  No reasonable jury could find that Cephas acted outside the scope of his employment or in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights by simply assisting in the restraint and handcuffing of plaintiff after Kelly arrested him. For both of these reasons, Cephas' motion for summary judgment as to Count IV is granted.

 McNesby moves for judgment on the pleadings as to Count IV.  He argues that plaintiff's claim that Kelly planted marijuana on plaintiff in order to justify his arrest and prosecution inherently implicates malice and willful disregard for plaintiff's safety and personal rights.  He also notes that the act alleged by plaintiff could never be committed negligently. Accordingly, McNesby contends, because he asserted his immunity pursuant to Fla. Stat. § 768.28(9) in his answer to the complaint and he clearly is entitled to such immunity, judgment should be entered in his favor on this claim.

Plaintiff responds that McNesby properly acknowledges that Count IV is pled in the alternative.  Plaintiff contends, however, that McNesby has failed to acknowledge that the

planting of drugs is not the only element of his state false arrest claim.  The complaint also alleges that Kelly unlawfully seized plaintiff prior to the alleged planting of drugs. According to plaintiff, the jury need never reach the allegation regarding the planted marijuana before deciding that plaintiff was falsely arrested.  And, if the jury believed that plaintiff was seized unlawfully pursuant to a stop that violated Terry, "it can (and in fact, must) find that false arrest occurred under state law."  (Doc. 25 at 3).  Plaintiff submits that such a finding of false arrest would not necessarily implicate either malicious or nonmalicious conduct. Based on the facts alleged in the complaint, however, a jury could conclude "that Plaintiff was falsely arrested without malice by simply finding that an unlawful, but nonmalicious, 'Terry stop' occurred." (Id.).  Under these circumstances, plaintiff reasons, McNesby could be "held liable for all damages stemming from the unlawful investigative stop, including any damages Plaintiff suffered as a result of his subsequent arrest and usage of force, regardless of whether planting of evidence occurred." (Id.).  If planting of evidence did take place, the chain of causation from the initial stop would not be broken because such "heinous and malicious" conduct is "certainly foreseeable" following a Terry stop where force is used.  Applying the "but for" causation and damages analysis used in common law, a jury could find that but for the unlawful Terry stop, Kelly would not have planted the drugs.  Thus, according to plaintiff, if the jury found that Kelly planted the marijuana McNesby would be liable for damages since they stemmed from the nonmalicious Terry stop.  Alternatively, however, if the jury found that the marijuana was not planted, they could still hold McNesby liable for the false arrest because the marijuana would never have been discovered but for the unlawful Terry stop.[21]

　　　　As an initial matter, the court rejects plaintiff's assertion that if the jury were to accept that he had been seized pursuant to an unlawful Terry stop "it can (and in fact, must) find that false arrest occurred under state law."  (Doc. 25 at 3).  The case of Walker v. City of Pompano Beach, 763 So.2d 1146, 1148 (Fla. 4th DCA 2000), cited by plaintiff in support of this contention, is inapposite.  In Walker the court noted that the "sole issue on

---

[21] Plaintiff also complains that McNesby failed to comply with the conference requirement set forth in N.D.Fla.Loc.R. 7.1(B).  In this instance the court shall excuse McNesby's noncompliance.

appeal is whether the trial court was correct in its ruling that 'there existed a founded suspicion which formed the basis to conduct the temporary stop and detention of the Plaintiffs.'" Id. at 1147.  Holding that "no founded suspicion existed to justify the stop," id., the court reversed the final summary judgment entered in the defendant's favor and remanded with instructions to grant plaintiffs' motion for summary judgment "as to the issue of the legal justification for the stop." Id. at 1149.  Walker simply does not stand for the proposition that a finding of unlawful arrest inevitably flows from a finding of unlawful seizure.   Such a proposition is not logical and it is not the law.  The court also rejects plaintiff's tortured, if not preposterous, causation theory regarding the allegation of planted marijuana.

Nevertheless, accepting the allegations in the complaint as true, and construing the facts and inferences in the light most favorable to plaintiff, the court concludes that McNesby is not entitled to judgment on the pleadings as to Count IV. As referenced previously, as a general matter sovereign immunity is not a bar to a claim for false arrest. See Lester, 603 So.2d at 19; see also Johnson v. State Department of Health and Rehabilitative Services, 695 So.2d 927, 929 (Fla. 2d DCA 1997); Thomas v. Florida Game & Fresh Water Commission, 627 So.2d 541 (Fla. 2d DCA 1993).  More particularly, the court concludes granting immunity to McNesby is not appropriate at this stage of the proceedings in this case.  In Richardson v. City of Pompano Beach, 511 So.2d 1121 (Fla. 4th DCA 1987), in considering allegations of false arrest and excessive force by a city police officer, the court concluded that the alleged acts did not fall beyond the scope of the officer's employment merely because they were intentional.  The court held that the employing agency could assume liability in that situation and thus that summary dismissal was not proper. Id. at 1123-24.  Here, plaintiff alleges in his complaint that Kelly and Cephas acted intentionally and within the scope of their employment in making the arrest. As the deputies had the lawful authority to make arrests, the fact that Kelly, as the arresting officer, may have "intentionally abused his office does not in itself shield the sheriff from liability." McGhee v. Volusia County,  679 So.2d 729 (Fla. 1996).  Further, based on the allegations of the complaint, the court concludes that "the question must be put to the

fact-finder whether [Kelly] acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or wilful disregard of human rights, safety, or property" in arresting plaintiff. Id. See § 768.28(9)(a).  For these reasons, the court finds that based upon the pleadings McNesby is not entitled to immunity pursuant to § 768.28(9)(a) for plaintiff's allegedly unlawful arrest.  McNesby's motion is therefore denied.

**Conclusion**

For the reasons stated above, Cephas' motion for summary judgment is GRANTED; partial summary judgment in Kelly's favor is GRANTED sua sponte; Williams' motion for partial summary judgment is DENIED, and McNesby's motion for partial judgment on the pleadings is DENIED.  Before this matter proceeds to trial, in the interests of the parties and the court's own docket, the parties shall be required to attend a settlement conference with the magistrate judge.  By separate order the matter shall be referred to the magistrate judge for this purpose, and the settlement conference shall be conducted prior to the trial now set for November 20, 2006. _

Accordingly, it is hereby ORDERED:

1.      Cephas' motion for summary judgment (doc. 17) is GRANTED.

2.      On the court's own motion, summary judgment in Kelly's favor is GRANTED as to plaintiff's claim of unlawful seizure in Count III.

3.      Williams' motion for partial summary judgment (doc. 21) is DENIED.

4.      McNesby's motion for partial judgment on the pleadings (doc. 18) is DENIED.

**DONE and ORDERED** this 29th day of September, 2006.


                              s/ M. Casey Rodgers
                         **M. CASEY RODGERS**
                         **UNITED STATES DISTRICT JUDGE**